T.C. Memo. 2020-118

UNITED STATES TAX COURT

RITCHIE N. STEVENS AND JULIE A. KEEN STEVENS, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

RITCHIE N. STEVENS AND JULIE KEEN-STEVENS, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 29815-13, 9539-15.[1]          Filed August 6, 2020.

R issued notices of deficiency to Ps for 2006, 2008, 2009, and
2010. He also issued separate notices of deficiency to P-H and P-W
for 2007, 2011, and 2012 because Ps had not filed a joint return for
any of those years before R issued the notices of deficiency. Ps filed
a 2011 return only after filing their petition in docket No. 9539-15 but
have not, to date, filed a return for either 2007 or 2012. For 2007 and
2012, Ps provided R only with unsigned returns. Each return Ps filed
or otherwise provided to R for the years in issue reports losses from
partnerships sufficient to offset their reported income, including
losses from PS1 and PS2 for 2006 and a loss from PS3 for 2008. Ps'
2008 return also reports a net farm rental loss. PS' returns for 2008
through 2012 report net operating loss carryforwards. R's notice of

_____

[1]We consolidated the cases at docket Nos. 29815-13 and 9539-15 for trial,
briefing, and opinion.

**[\*2]** deficiency for 2008 determined that Ps had unreported capital gain from sources other than partnerships.

Held: Because Ps, who were either citizens or residents of the United States, were PS1's only partners during 2006, the partnership was a "small partnership", as defined by I.R.C. sec. 6231(a)(1)(B)(i), for that year.

Held, further, under Harrell v. Commissioner, 91 T.C. 242 (1988), Ps have the burden of proving that PS2 was not a small partnership for 2006 and that PS3 was not a small partnership for 2008; in each case, they have not met their burden.

Held, further, because R's disallowance of the loss deductions Ps claimed for 2006 from PS1 and PS2 gave rise to a deficiency for that year, the "oversheltered return" rules of I.R.C. sec. 6234 do not apply and we have jurisdiction to redetermine the deficiency R determined for the year.

Held, further, Ps did not substantiate the loss they reported for 2006 from PS1 or PS2; consequently, R's deficiency determination for that year is upheld.

Held, further, I.R.C. sec. 6234 does not apply for 2007 or 2009 through 2012; Ps filed no return for 2007 or 2012, and the adjustments to nonpartnership items reflected in the notices of deficiency for 2009 through 2012 would not give rise to a deficiency for any of those years even if Ps had not reported a net loss for the year from partnership items. I.R.C. sec. 6234(a)(1), (c).

Held, further, because the notices of deficiency for 2007 and 2009 through 2012 advised Ps that R had determined deficiencies, those notices are valid under Dees v. Commissioner, 148 T.C. 1 (2017); the fact that the adjustments to Ps' nonpartnership income did not result in deficiencies without the adjustment of partnership losses does not require invalidation of the notices; and R's possible failure to consider the returns Ps filed for 2009 and 2010 does not render

**[*3]** invalid the notices for those years because any such failure was not manifest on the faces of the notices.

Held, further, Ps' filing of a petition in response to the notices of deficiency issued for 2007 and 2009 through 2012 gave us jurisdiction to redetermine the deficiencies; because R's adjustments to Ps' nonpartnership income for each year are offset by losses Ps claim from partnerships the adjustment of which requires partnership-level proceedings, Ps have no deficiencies for 2007 or 2009 through 2012.

Held, further, I.R.C. sec. 6234 applies for 2008 because (1) Ps' return for the year shows no taxable income and a net loss from partnerships, (2) R made a determination with respect to nonpartnership items for the year, and (3) while R's adjustments to nonpartnership items do not give rise to a deficiency, they would do so in the absence of the net partnership loss.

Held, further, the 2008 notice of deficiency is treated as a notice of adjustment under I.R.C. sec. 6234(a) and the petition Ps filed is treated as a petition for redetermination of adjustments to nonpartnership items under I.R.C. sec. 6234(c). I.R.C. sec. 6234(h)(2).

Held, further, Ps have not provided grounds for challenging R's determination of their capital gain from nonpartnership sources for 2008 or his disallowance of their deduction for their loss from PS3 or their net farm rental loss for that year; consequently, our declaratory judgment under I.R.C. sec. 6234(c) for 2008 will uphold R's determinations concerning those items.

Ritchie N. Stevens and Julie A. Keen Stevens, pro sese.

Rollin G. Thorley and Ric D. Hulshoff, for respondent.

[*4]        MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent determined deficiencies in petitioners'
Federal income tax for their taxable years ended December 31, 2006, 2008, 2009,
and 2010.  He also determined additions to tax under section 6651(a)(1) and
accuracy-related penalties under section 6662(a) for 2006, 2008 and 2010.[2]
Respondent issued separate notices of deficiency to each petitioner for his or her
taxable years ended December 31, 2005, 2007, 2011, and 2012.[3]  The notices of
deficiency for 2005, 2007, 2011, and 2012, dated January 9 and 12, 2015,
determined deficiencies in each petitioner's Federal income tax for each of those
years and also determined additions to tax under section 6651(a)(1) and (2) and
estimated additions to tax under section 6654 for 2011 and 2012.  After
respondent issued the notices of deficiency, petitioners provided him with

_____

[2]All section references are to the Internal Revenue Code in effect for the
years in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure unless otherwise indicated.  We round all dollar amounts to the nearest
dollar.

[3]Petitioners had not filed a joint return for 2005, 2007, 2011, or 2012, when
respondent issued the notices of deficiency for those years.  See sec. 6013
(allowing married couples to file joint returns); Dritz v. Commissioner, T.C.
Memo. 1969-175, 28 T.C.M. (CCH) 874, 880 (1969) (holding that the privilege of
joint filing status depends on an election made by "the 'making of a return,' as
provided in section 6013"), aff'd, 427 F.2d 1176 (5th Cir. 1970).

**[\*5]** unsigned returns for 2007 and 2012 and a signed return for 2011. None of the returns that petitioners filed or otherwise provided to respondent showed a tax liability. For each year, petitioners report losses originating in partnerships subject to the unified partnership audit and litigation rules enacted by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) and in effect before 2018. Those partnership losses more than offset the income shown on each return. Before we tried the cases, we granted respondent's motion to dismiss for lack of jurisdiction so much of each case as relates to partnership items. We then ordered respondent to provide recomputed deficiencies reflecting our dismissal of partnership items from the cases. During the course of the proceedings, petitioners presented no evidence challenging the adjustments underlying the deficiencies respondent determined. Therefore, the principal issue the cases raise is the extent to which we can uphold respondent's recomputed deficiencies in the face of the claimed partnership loss deductions.

## FINDINGS OF FACT

Petitioners were residents of Nevada when they filed their petitions in these cases. Their petition in docket No. 9539-15, dated April 8, 2015, was filed by the Court on April 13, 2015.

[*6] TYE December 31, 2006

In October 2010, petitioners filed a Form 1040, U.S. Individual Income Tax Return, for the taxable year ended (TYE) December 31, 2006.  In June 2014, petitioners provided to one of respondent's Appeals officers an amended 2006 return.  Petitioners' amended return reports losses from partnerships of $2,799,200, including a loss of $1,535,078 from a partnership called Arlington Farms and a loss of $917,896 from a partnership referred to as SNJ RNK RSJS.

Arlington Farms failed to file a partnership return for TYE December 31, 2006.  In December 2016, respondent conducted a name search of an online business registry maintained by the Oregon secretary of state.  That search yielded an entry for an entity named Arlington Farms that bears a "Registry Date" of September 19, 2008, and identifies both petitioners and a woman named Mary Pesce as "registrants".  The Certification of Lack of Record respondent submitted to attest to his inability to find a 2006 partnership return for Arlington Farms refers to Ms. Pesce as the entity's general partner.

SNJ RNK RSJS also failed to file a partnership return for TYE December 31, 2006.  In October 2014, petitioners provided respondent with an unsigned 2006 return for SNJ RNK RSJS that identifies them as the entity's only partners.

**[\*7]**    As a result of the partnership losses petitioners reported on their 2006 amended return, that return reported adjusted gross income of -$2,079,805.  It claimed itemized deductions of $143,348, including deductions for taxes and interest.  The return also claimed a deduction for personal exemptions of $13,200 and reported no taxable income and no tax liability.

The only noncomputational adjustments reflected in respondent's recomputed deficiency for 2006 are his disallowance of the loss deductions petitioners claimed from Arlington Farms and SNJ RNK RSJS.  Respondent's calculation of his recomputed deficiency for 2006 shows "Taxable Income Per Return or as Previously Adjusted" of -$2,236,353.[4]

Although the notice of deficiency for 2006, dated September 24, 2013, determined a delinquent filing addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662(a), respondent's calculation of a recomputed deficiency for 2006 includes only an accuracy-related penalty.

---

[4]The amount respondent treated as negative taxable income on petitioners' 2006 amended return equals the adjusted gross income shown on that return (-$2,079,805) reduced by itemized deductions of $143,348 and a deduction for personal exemptions of $13,200.

[*8] TYE December 31, 2007

Respondent has no record of having received a return from either petitioner for TYE December 31, 2007. Petitioners allege they filed a 2007 return and submitted a certified mail receipt showing that, on October 20, 2011, respondent's Ogden, Utah, Service Center received an item mailed by petitioner Ritchie Stevens (Dr. Stevens).

In January 2015, respondent issued a separate notice of deficiency to each petitioner that included the taxable year 2007 and stated a deficiency of $15,825 for the year. Respondent based petitioners' deficiencies on the following items of unreported income: rents of $1,894, taxable interest of $285, wages of $144,500, and dividends of $26,157.

The following January, petitioners provided respondent with an unsigned 2007 return. That return reports the following items of income from sources other than partnerships: wages of $144,500, interest of $81,151, dividends of $26,793, capital gain of $118, and patronage income of $1,894. The return also reports $700,959 of income from a partnership named RNS, Ltd., and a loss of $7,594,316 from another partnership, SNJ, Ltd. SNJ, Ltd., did not file a partnership return for 2007. Petitioners' unsigned 2007 return does not report a net operating loss (NOL)

**[\*9]** carryforward from 2006.  Line 41 of that return (adjusted gross income less itemized deductions) reports ‒$5,288,778.

Respondent based his recomputed deficiency for 2007[5] on the following adjustments:  a deduction for personal exemptions of $6,800, interest income of $353, rent and patronage income of $1,894, wages of $144,500, dividends of $26,793, and capital gain of $118.  Those adjustments do not include income from RNS, Ltd., or the disallowance of any deduction for a loss from SNJ, Ltd.-- presumably because those items were covered by respondent's motion to dismiss.

TYE December 31, 2008

Respondent has no record of having received an original return from petitioners for TYE December 31, 2008.  In June 2014, however, respondent received from petitioners a Form 1040X, Amended U.S. Individual Income Tax Return, for 2008.

Petitioners' 2008 amended return reports no taxable income and a $5,165,631 loss from partnerships.  The partnership losses include a loss of $14,743 from RSJS Holdings, a $144,766 loss from RNS, Ltd., and a $5,006,122 loss from SNJ, Ltd.  Schedule E, Supplemental Income and Loss, of petitioners'

---

[5]For 2007, as well as 2011, respondent calculated a single recomputed deficiency, accepting petitioners' claim of joint filing status despite their failure to have filed returns for those years.

[*10] 2008 amended return reports a net farm rental loss of $19,834 in addition to the partnership losses. Line 21 of petitioners' 2008 amended return (other income) reports a loss of $5,288,778 labeled "NOL Carryover to 2008".[6] The return reports adjusted gross income of −$9,766,818 and claims itemized deductions of $81,222 and a deduction for personal exemptions of $17,500.

On January 13, 2015, respondent mailed petitioners a notice of deficiency for 2008. The determined deficiency rested on the following noncomputational adjustments: unreported rental and patronage income of $4,072 and capital gain of $11,746,163, and the disallowance of deductions for the partnership and farm rental losses and NOL carryforward claimed on petitioners' 2008 amended return. The 2008 notice of deficiency states "Taxable Income Per Return or as Previously Adjusted" as −$9,865,540.[7]

Respondent's recomputed deficiency for 2008 rests on four noncomputational adjustments: unreported rental and patronage income of $4,072

---

[6]The NOL carryforward deduction claimed on petitioners' 2008 amended return equals the amount shown on line 41 (adjusted gross income less itemized deductions) of petitioners' unsigned 2007 return.

[7]The amount respondent treated as negative taxable income shown on petitioners' 2008 amended return equals the adjusted gross income shown on that return (−$9,766,818) reduced by itemized deductions of $81,222 and a deduction for personal exemptions of $17,500.

[*11] and capital gain of $3,378,419, and the disallowance of deductions for the partnership losses of $5,165,631, the net farm rental loss of $19,834, and the $5,288,778 NOL carryforward from 2007 that petitioners claimed on their 2008 amended return. After taking into account the effect of the noncomputational adjustments on petitioners' itemized deductions and a deduction for personal exemptions, respondent arrives at total adjustments of $13,881,333, corrected taxable income of $4,015,793, and a deficiency, before penalties, of $1,365,170. Respondent's recomputed deficiency for 2008 also includes an accuracy-related penalty under section 6662(a) of $273,034 and a delinquent filing addition to tax under section 6651(a)(1) of $298,615.

Respondent computed his capital gain adjustment of $3,378,419 by comparing sales and purchases of stock reported on records of petitioners' investment accounts that he received by subpoena from brokers. One of petitioners' brokers, Interactive Brokers, provided an "Activity Statement" for their account that sets forth information on a list of transactions that runs over 100 pages. Some of the lines on that statement show positive amounts and others negative amounts. The column headings on the list include "Basis" and "Realized P/L". Respondent's calculation of petitioners' gain from that account makes no use

[*12] of the transaction-by-transaction list of basis and gain or loss. Instead, respondent simply compares total purchases to total proceeds.

TYE December 31, 2009

Respondent did not receive a return for TYE December 31, 2009, from petitioners until October 2013. Although the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for that year does not indicate their filing a subsequent return for the year, the parties stipulated respondent's receipt of an amended 2009 return in July 2014. Petitioners' 2009 amended return reports the following items:

| | |
|---|---|
| Wages | $707,948 |
| Taxable interest | 1,384 |
| Ordinary dividends | 24,904 |
| Capital gain | 12,903 |
| Loss from sale of business property (Form 4797) | (15,226) |
| Rental real estate loss | (5,749) |
| Losses from partnerships | (1,017,589) |
| Net farm loss | (9,843) |
| Other income | 2,950 |
| NOL carryover | (9,766,818) |
| Adjusted gross income | (10,065,136) |
| Itemized deductions | 140,509 |

[*13]
|  |  |
|---|---|
| Exemptions | 18,250 |
| Taxable income | -0- |

(Petitioners' originally filed return for 2009 reports the same amounts of wages, interest, dividends, and other income.)  According to Schedule B, Interest and Ordinary Dividends, of petitioners' return, the taxable interest includes $1,117 from SNJ, Ltd., $4 from RNS, Ltd., and $21 from Coy Products, LLC (Coy Products).  The ordinary dividends and capital gain and the loss reported on Form 4797 are from SNJ, Ltd.  The partnership losses include an $84,183 nonpassive loss from SNJ, Ltd., a $668,696 nonpassive loss from RNS, Ltd., a $3,506 passive loss from RSJS Holdings Limited Partnership, a $255,302 nonpassive loss from Kentucky Partners, and a $5,902 passive loss from Dart 5485 LLC.  The NOL carryforward deduction claimed on petitioners' 2009 amended return equals the adjusted gross income shown on their 2008 amended return.

The notice of deficiency for petitioners' 2009 taxable year advised petitioners of respondent's determination of a deficiency of $169,869, which purported to rest on the following adjustments:

[*14]

| | |
|---|---|
| Sched. E loss--partnership or S corp. | ($5,640) |
| Wages | 707,948 |
| Rents received (Sched. E1) | (7,427) |
| Dividends | 24,904 |
| Other income--rent and patronage | 2,950 |
| Taxable interest | 1,384 |
| Capital loss | (3,000) |
| Itemized deductions | (138,935) |
| Exemptions | (12,165) |

The notice of deficiency does not identify the source of the $5,640 Schedule E loss deduction allowed. The explanation of the adjustments, in comparing "per exam" and "per return" amounts, states each of the latter as zero.

Respondent used petitioners' amended return for 2009 as the basis for calculating his recomputed deficiency for that year. That deficiency is based on adjustments that would increase petitioners' taxable income by $10,796,217. Among those adjustments is the disallowance of deductions for all $1,017,589 of partnership losses petitioners reported on Schedule E. Respondent treated petitioners' return as showing taxable income of -$10,223,895 (adjusted gross

[*15] income of −$10,065,136 reduced by the claimed itemized deductions and exemptions).

TYE December 31, 2010

In April 2014, respondent's Fresno, California, Service Center received a signed 2010 return from petitioners that reported the following items:

| | |
|---|---|
| Taxable interest | $264 |
| Ordinary dividends | 24,149 |
| Schedule C expenses | (391,426) |
| Capital gain | 243 |
| Other gain (Form 4797) | 13,456 |
| Loss from rental real estate | (9,515) |
| Losses from partnerships and S corporations | (167,691) |
| Net farm loss | (15,485) |
| Other income | 9,050 |
| NOL carryover | (10,188,499) |
| Adjusted gross income | (10,725,454) |
| Itemized deductions | (71,137) |
| Exemptions | (18,250) |
| Taxable income | -0- |

According to Schedule B of petitioners' 2010 return, $84 of the taxable interest and all of the dividends came from SNJ, Ltd. (The remaining interest came from

[*16] nonpartnership sources.)  The capital gain and $12,872 of the gain reported on Form 4797 also came from SNJ, Ltd.  The only reported S corporation loss was a passive loss of $584.  The partnership losses include a $139,447 nonpassive loss from SNJ, Ltd., a $921 nonpassive loss from RNK Family Limited Partnership, a nonpassive loss of $20,190 from RSJS Holdings Limited Partnership, and a $6,549 nonpassive loss from Coy Products.  The NOL carryforward deduction claimed on petitioners' 2010 return is approximately equal to the adjusted gross income reported on their 2009 return (−$10,065,136).

Respondent's notice of deficiency for petitioners' 2010 taxable year advised them of his determination of a deficiency for that year of $230,772, which purports to rest on the following adjustments:

| | |
|---|---:|
| Sch C1--gross receipts or sales | $9,050 |
| Ordinary dividends | 24,149 |
| Other income--rents & patronage | 51 |
| Taxable interest | 264 |
| Sch E1--rents received | (9,515) |
| Form 4797 Gain | 13,456 |
| Capital gain from partnerships | 90,800 |
| Capital gain from other sources | 730,356 |
| SE AGI adjustment | (640) |

[*17]      Itemized deductions                    (75,475)

           Exemptions                            (14,600)

As was the case for 2009, the explanation of the proposed adjustments underlying

the 2010 deficiency, in comparing "per exam" and "per return" amounts, states

each of the latter as zero.

Respondent bases his recomputed deficiency for 2010 on adjustments to

taxable income that total $11,332,509 and also includes an accuracy-related

penalty under section 6662(a) of $29,834 and an addition to tax under section

6651(a)(1) of $37,287.  In arriving at his recomputed deficiency, respondent treats

petitioners' 2010 return as showing taxable income of –$10,814,841, equal to the

adjusted gross income shown on that return (–$10,725,454) reduced by itemized

deductions of $71,137 and exemptions of $18,250.  The only adjustment

underlying respondent's recomputed deficiency for 2010 that appears on the notice

of deficiency for that year is an increase to capital gain of $730,356.  The

recomputed deficiency also reflects a purported disallowance of the $10,188,499

NOL carryfoward deduction petitioners claimed on their 2010 return.

TYE December 31, 2011

Respondent issued a separate notice of deficiency to each petitioner for

TYE December 31, 2011.  The notice issued to Mrs. Stevens advised her that

[*18] respondent had determined a deficiency in her Federal income tax for that year of $107,796. The notice respondent issued to Dr. Stevens advised him of respondent's determination of a deficiency of $41,764. Those deficiencies reflected the following combined adjustments:

| | |
|---|---|
| Sch E1--rents received | $25 |
| Taxable interest | 2,530 |
| Wages | 26,538 |
| Standard deduction | (11,600) |
| Exemptions | (7,400) |
| Capital gain | 201,496 |
| Sch C1--gross receipts or sales | 45,213 |
| Pensions and annuities | 244,709 |
| Other income--rents & patronage | 26 |
| SE AGI adjustment | (1,597) |

On April 18, 2015, respondent's Fresno Service Center received a signed return from petitioners for 2011. Their signatures on that return are dated April 12, 2015.

[*19] Petitioners' 2011 return reports the following items:

| | |
|---|---:|
| Wages | $26,539 |
| Taxable interest from SNJ, Ltd. | 78 |
| Other taxable interest | 2,496 |
| Ordinary dividends from SNJ, Ltd. | 14,221 |
| Schedule C gross income | 8,929 |
| Schedule C expenses | (144,424) |
| Net capital gain from SNJ, Ltd. | 755 |
| Loss from sale of rental property | (201,268) |
| Pensions and annuities | 240,000 |
| Rental real estate loss | (52,985) |
| Loss from SNJ, Ltd. | (566,999) |
| Losses from other passthrough entities | (1,674) |
| Net farm income | 3,509 |
| Other income | 45,213 |
| NOL carryover | (10,750,110) |
| Adjusted gross income | (11,375,720) |
| Itemized deductions | 87,508 |
| Exemptions | 18,500 |

[*20]

| Taxable income | -0- |
|---|---|
| Tax | -0- |

The loss reported from SNJ, Ltd., for 2011 was covered by respondent's motion to dismiss. Petitioners did not provide a reconciliation of the NOL carryforward deduction from 2010 claimed on their 2011 return ($10,750,110) and the adjusted gross income reported on their 2010 return (-$10,725,454).

Respondent's recomputed deficiency for 2011 rests on the following adjustments:

| | |
|---|---|
| Exemptions | ($7,400) |
| SE AGI adjustment | (3,824) |
| Sch C--income | 54,142 |
| Pensions and annuities | 244,709 |
| Interest income | 2,496 |
| Other income (rents and patronage) | 26 |
| Wages and salary income | 26,538 |
| Standard deduction | (11,600) |

TYE December 31, 2012

Petitioners did not file a return for 2012. Respondent determined deficiencies on the basis of unreported wages, receipts reported on Schedule C, Profit or Loss From Business, pensions and annuities, interest, and capital gain.

[*21] The adjustments stated in the notices of deficiency resulted in corrected taxable income in the combined amount of $418,175. Respondent's recomputed deficiency for 2012 does not include an adjustment for capital gain and results in corrected taxable income of $389,326. The recomputed deficiency includes an addition to tax under section 6651(a)(1) of $24,649, an addition to tax under section 6651(a)(2) of $26,292, and an addition to tax under section 6654 of $1,964.

In February 2016, petitioners provided respondent with an unsigned 2012 return. Among other things, that return reports a loss from SNJ, Ltd., of $33,147, and an NOL carryforward from 2011 of –$11,463,228.[8]

---

[8]The NOL carryforward from 2011 reported on petitioners' unsigned 2012 return equals the amount reported on line 41 (adjusted gross income less itemized deductions) of their 2011 return.

**[\*22]**                                    OPINION

I.      Overview

Petitioners did not file timely returns for any of their taxable years from 2006 through 2012.[9]  For two of those years, 2007 and 2012, petitioners did not file returns at all.

Petitioners allege that the document received in October 2011 by the Internal Revenue Service Center for Ogden, Utah, was their joint return for 2007. Respondent, however, has no record of having received a signed 2007 return from petitioners.  Moreover, the record does not establish the contents of the October 2011 mailing.  When Dr. Stevens sought to testify at trial that his accountant had filed a 2007 return for him and his wife, we sustained respondent's objection to that testimony as hearsay.  We therefore find on the basis of the record that petitioners did not file a return for 2007.

---

[9]The notices of deficiency in response to which petitioners filed their petition in docket No. 9539-15 covered their 2005 taxable years.  Respondent, however, concedes the absence of deficiencies for those years.  And we previously granted respondent's motion for summary judgment that we "lack[] jurisdiction to order a refund or credit of any overpayment with respect to * * * [petitioners'] 2005 tax liability."  Therefore, no issues remain for us to decide in regard to petitioners' 2005 taxable years.

**[*23]** Petitioners did file returns for 2006 and 2008 through 2011, but those returns were late.[10] They filed a 2011 return only after filing their petition in the case that covers that year.

Although petitioners presented no evidence that challenges any of the adjustments underlying the deficiencies respondent determined, for the reasons explained below, we can uphold respondent's recomputed deficiency only for 2006. For petitioners' 2008 taxable year, while we lack jurisdiction to redetermine respondent's recomputed deficiency, we do have jurisdiction under the "oversheltered return" rules of section 6234 to issue a declaratory judgment regarding items not attributable to partnerships pending any adjustment of the losses from partnerships that petitioners claim to have offset their income.

Section 6234 does not apply for any of the remaining taxable years in issue (that is, 2007 and 2009 through 2012). The oversheltered return rules provided in that section do not apply for petitioners' 2007 and 2012 taxable years because they did not file returns for those years. And section 6234 does not apply for petitioners' 2009, 2010, or 2011 taxable year because the adjustments in the notice of deficiency for each year would not result in a deficiency in petitioners' joint

---

[10]Respondent has no record of having received an original return from petitioners for their 2008 taxable year. In June 2014, however, he received an amended 2008 return that he treated as petitioners' original return for that year.

[*24] income tax liability even if petitioners had not claimed a net loss from partnerships for the year.

Respondent concedes that the adjustments he seeks for petitioners' 2009 taxable year do not result in a deficiency. And we cannot uphold respondent's recomputed deficiency for 2007, 2010, 2011, or 2012. Upholding the deficiencies respondent determined for 2007, 2011, and 2012 would deny petitioners a prepayment forum for contesting the adjustment of partnership losses, contrary to Congress' intent in enacting section 6234. And the deficiency he determined for 2010 depends on the disallowance of an NOL carryforward deduction that cannot be adjusted without adjustment of the partnership losses that gave rise to it.

Consequently, for petitioners' taxable years 2007 and 2009 through 2012, we face a choice between concluding that we lack jurisdiction or instead accepting jurisdiction under section 6214(a)[11] and concluding that petitioners have no deficiency for any of those years. That choice turns on the validity of the notices of deficiency respondent issued for the affected years. We see no grounds on which to invalidate the notices of deficiency for petitioners' taxable years 2007 and 2009 through 2012, even though the adjustments reflected in those notices

[11]Sec. 6214(a) grants us "jurisdiction to redetermine the correct amount of the deficiency" stated in a notice of deficiency when a taxpayer files a petition for redetermination of that deficiency.

[*25] would not result in deficiencies after taking into account the claimed partnership losses. Therefore, we must conclude that petitioners have no deficiencies for any of those years.

In the balance of this opinion, we explain in more detail our determination of the extent of our jurisdiction for each of the taxable years before us and how we exercise that jurisdiction.

## II. Year-by-Year Determination and Exercise of Jurisdiction

### A. 2006

Respondent asks that we uphold his recomputed deficiency for petitioners' 2006 taxable year. We can do so, however, only if the oversheltered return rules of section 6234 do not apply for that year.

#### 1. Section 6234 Oversheltered Return Rules: In General

TEFRA's unified partnership audit and litigation rules require that the tax treatment of partnership items[12] be determined in partnership-level proceedings that are generally binding on all partners. When applicable, the TEFRA

---

[12]Sec. 6231(a)(3) defines "partnership item" to mean "any item required to be taken into account for * * * [a] partnership's taxable year * * * to the extent regulations prescribed by the Secretary provide that * * * such item is more appropriately determined at the partnership level than at the partner level." Special rules also apply to "affected items", which include any item that, though not itself a partnership item, is nonetheless "affected by a partnership item." See sec. 6231(a)(5).

[*26] partnership rules avoid the need for duplicative partner-level proceedings that might produce inconsistent results. Staff of J. Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268 (J. Comm. Print 1982). The rules generally require the Internal Revenue Service (IRS) to conduct partnership-level proceedings to adjust partnership items before assessing tax against a partner as a result of the partnership adjustments.

If a partner claims a large enough loss from a partnership subject to the TEFRA rules, that loss might not only shelter the income reported by the partner on his individual return but also absorb the effect of any adjustments the IRS seeks to make to the partner's nonpartnership items, thereby preventing the determination of a deficiency. Congress enacted the "oversheltered return" rules of section 6234 to address that prospect. Those rules apply when four conditions are met. First, the taxpayer must "file[] an oversheltered return for a taxable year". Sec. 6234(a)(1). A return is "oversheltered" if it shows no taxable income and a net loss from partnership items. Sec. 6234(b). Second, the Commissioner must "make[] a determination with respect to the treatment of items (other than partnership items)" of the taxpayer for the taxable year in question. Sec. 6234(a)(2). Third, it must be the case that the Commissioner's adjustments to

[*27] nonpartnership items "do not give rise to a deficiency".  Sec. 6234(a)(3).

And fourth, those adjustments "would give rise to a deficiency if there were no net

loss from partnership items".  Id.  In short, the rules apply when the effects of

adjustments to nonpartnership items are absorbed by the taxpayer's reported net

partnership loss so that the adjustments do not produce a deficiency.

When the oversheltered return rules apply, instead of issuing a notice of

deficiency to the taxpayer, the Commissioner can "send a notice of adjustment"

that reflects his determination regarding nonpartnership items.  Sec. 6234(a).  The

taxpayer can then file with this Court "a petition * * * for redetermination of the

adjustments."  Sec. 6234(c).  Such a petition gives us "jurisdiction to make a

declaration with respect to all items (other than partnership items and affected

items which require partner level determinations as described in section

6230(a)(2)(A)(i)) for the taxable year to which the notice of adjustment relates".

Id.[13]

_____

[13]When partnership items are adjusted through partnership-level
proceedings, the Commissioner can generally collect additional tax due from the
partners as a result of those adjustments without following the deficiency
procedures prescribed by subch. B of ch. 63.  Sec. 6230(a)(1) provides as a general
rule that those procedures "shall not apply to the assessment or collection of any
computational adjustment."  Sec. 6231(a)(6) defines the term "computational
adjustment" to mean "the change in the tax liability of a partner which properly
reflects the treatment under * * * [the TEFRA partnership rules] of a partnership

(continued...)

**[*28]** Congress enacted section 6234 to "overrule[]" this Court's decision in Munro v. Commissioner, 92 T.C. 71 (1989).  S. Rept. No. 105-33, at 253 (1997). In Munro, the Commissioner sought to make adjustments to nonpartnership items of the taxpayers that would not, of themselves, have resulted in a deficiency because of losses the taxpayers reported from TEFRA partnerships.  The taxpayers moved to dismiss for lack of jurisdiction on the ground that the Commissioner had not determined a deficiency.  The Commissioner argued that "solely for the purpose of computing * * * [the taxpayers'] deficiency attributable to disallowed nonpartnership items", he should be permitted to "prospectively disallow[]" the partnership losses pending the completion of TEFRA proceedings.  Munro v. Commissioner, 92 T.C. at 73.  We concluded that we had jurisdiction and denied the taxpayers' motion to dismiss, reasoning as follows:

> [P]artnership items must be ignored in deficiency proceedings, which relate exclusively to nonpartnership items.  * * * By the same token, respondent may not take his proposed TEFRA partnership adjustments into account in a deficiency proceeding for any purpose, including the computation of the deficiency arising out of adjustments to nonpartnership items.  All partnership items must be separated from nonpartnership items and are exclusively the subject of a

---

[13](...continued)
item."  Sec. 6230(a)(2)(A), however, provides that deficiency procedures are required in the case of "any deficiency attributable to * * * affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items)".

**[\*29]** partnership proceeding.  Deficiency proceedings must exclusively consider nonpartnership items.  Consequently, partnership items (whether income, loss, deductions or credits) included on petitioners' return are completely ignored to determine if a deficiency exists that is attributable to nonpartnership items.  Any proposed adjustments to those partnership items likewise must be ignored.

Id. at 74.  The upshot was that we ignored the partnership losses in determining whether the nonpartnership adjustments resulted in a deficiency.

The approach we envisioned in Munro would put a taxpayer in the position of having to pay the tax resulting from adjustments to nonpartnership items that would be sheltered by partnership losses and then seek a refund if those partnership losses were ultimately upheld.  That approach would effectively deny the taxpayer a prepayment forum for contesting the adjustment of the partnership items.  Congress enacted section 6234 in part to address that concern.  See Staff of J. Comm. on Taxation, General Explanation of Tax Legislation Enacted in 1997 (1997 Blue Book), at 369-370 (J. Comm. Print 1997).

The Commissioner's issuance of a notice of deficiency does not preclude the application of the oversheltered return rules for the year or years covered by the notice.  Section 6234(h)(2) provides:

If the Secretary erroneously determines that subchapter B [regarding deficiency procedures] applies to a taxable year of a taxpayer and consistent with that determination timely mails a notice of deficiency to the taxpayer pursuant to section 6212, the notice of deficiency shall

[*30] be treated as a notice of adjustment under subsection (a) and any petition that is filed in respect of the notice shall be treated as an action brought under subsection (c).

2. Applicability of Section 6234 for Petitioners' 2006 Taxable Year

Respondent argues that "section 6234 does not apply to * * * [petitioners'] 2006 * * * tax year[] because * * * [his] adjustments to nonpartnership items are sufficient to establish a deficiency without adjusting any partnership items."  The only noncomputational adjustments reflected in respondent's recomputed deficiency for petitioners' 2006 taxable year are his disallowance of the deductions for losses petitioners claimed from Arlington Farms and SNJ RNK RSJS. Respondent's position that section 6234 does not apply for that year rests on the premise that the losses from Arlington Farms and SNJ RNK RSJS are not partnership items because each partnership was covered by the "small partnership" exception from the TEFRA rules.  If we accept that premise, it would follow that section 6234 does not apply for petitioners' 2006 taxable year because the third condition for its application would not be met:  Respondent's disallowance of the loss deductions claimed from those partnerships would be nonpartnership adjustments that would give rise to a deficiency.  See sec. 6234(a)(3).

**[*31]**       a.       SNJ RNK RSJS' Qualification as a Small Partnership

Section 6231(a)(1)(B)(i) provides: "The term 'partnership' shall not include any partnership having 10 or fewer partners each of whom is an individual (other than a nonresident alien), a C corporation, or an estate of a deceased partner." That limitation "is applied to the number of natural persons, C corporations, and estates of deceased partners that were partners at any one time during the partnership taxable year." Sec. 301.6231(a)(1)-1(a)(1), Proced. & Admin. Regs. Thus, a partnership qualifies for the exception for a taxable year only if it meets the 10-or-fewer limitation throughout that year. See id. subpara. (3) ("The determination of whether a partnership meets the requirements for the exception for small partnerships * * * shall be made with respect to each partnership taxable year.").

The record includes an unsigned 2006 partnership return for SNJ RNK RSJS that identifies petitioners as the entity's only partners. And petitioners did not object to respondent's proposed finding, on the basis of that return, that "SNJ RNK RSJS had two partners for the 2006 tax year, petitioner Ritchie N. Stevens and petitioner Julie A. Keen Stevens".[14] We can treat petitioners' claim of

---

[14]In violation of Rule 151(e)(3), petitioners' reply brief does not formally address any of respondent's proposed findings of fact.

**[\*32]** itemized deductions other than charitable contributions on their 2006 return as an admission that they were either citizens or residents of the United States during 2006. See sec. 873 (limiting the deductions allowable to nonresident aliens). Therefore, we find that petitioners were the only partners of SNJ RNK RSJS during 2006 and that each was either a citizen or a resident of the United States during that year. On the basis of that finding, we conclude that SNJ RNK RSJS qualified for the small partnership exception from the TEFRA rules for 2006.

                    b.        Arlington Farms' Qualification as a Small Partnership

Disallowance of a deduction for the $917,896 loss petitioners reported for 2006 from SNJ RNK RSJS would not, by itself, result in a deficiency. Respondent's calculation of his recomputed deficiency for 2006 shows "Taxable Income Per Return or as Previously Adjusted" of -$2,236,353. If the $1,535,078 loss that petitioners reported for 2006 from Arlington Farms is a partnership item, the oversheltered return rules of section 6234 would apply for petitioners' 2006 taxable year. Therefore, we must decide whether, as respondent claims, Arlington Farms also qualified for the small partnership exception of section 6231(a)(1)(B)(i) for 2006.

[*33] Respondent contends that we have already determined, for purposes of petitioners' 2006 case, that Arlington Farms "fell under the small partnership exception[]".  Respondent bases that contention on our having granted his motion to dismiss for lack of jurisdiction those portions of the consolidated cases that "relate[] to * * * partnership items".  But that motion asked only for a ruling that we did not have jurisdiction over items respondent viewed as partnership items.  Respondent did not seek summary judgment affirming our jurisdiction over items of those partnerships he does not view as subject to the TEFRA rules.  Respondent's motion included the assertion that "Arlington Farms qualifies for the small partnership exception of section 6231(a)(1)(B) and the Court has jurisdiction in the present cases to determine the nonpassive loss of $1,535,078.00" that petitioners reported from that partnership for 2006.  But the motion did not ask for a ruling to that effect.  As we read it, the motion addressed Arlington Farms and other partnerships that respondent does not regard as subject to the TEFRA rules only by way of explaining why he did not include those partnerships in his motion to dismiss for lack of jurisdiction.

We find no evidence in the record concerning the constituency of Arlington Farms' partners during 2006.  Respondent's posttrial brief includes a proposed finding of fact that "Arlington Farms had less than 10 partners, all of whom were

[*34] individuals and not pass-thru partners".  He bases that proposed finding on his search of the Oregon secretary of state's business registry, which identifies both petitioners and Ms. Pesce as "registrants".  Even leaving aside that the entry speaks only as of 2008--two years after the year in issue--the online registry indicates that "Partner (PTN)" and "Registrant (REG)" are separate categories of persons associated with the entity in question.  http://egov.sos.state.or.us/br/ pkg_br_web_assoc_name_srch.main (last visited May 1, 2020).  Therefore, the three individuals identified as "registrants" may not be partners, or may not be the entity's only partners.

As noted above, petitioners' reply brief did not formally address any of respondent's proposed findings of fact, as required by Rule 151(e)(3).  In a portion of their opening brief in which they accuse respondent of having failed to comply with section 6234, however, petitioners assert:  "Respondent's self-serving classifications, are severely wanting as even Arlington Farms partnership is one that is in excess of 10 people".[15]  Petitioners cite no evidence, however, concerning the number and identity of Arlington Farms' partners during 2006.

_____

[15]For good measure, petitioners add that one of respondent's attorneys "has personal knowledge thereof."

**[*35]** Even if we were to accept respondent's proposed finding because of petitioners' failure to challenge it, however, that finding would not support the conclusion that Arlington Farms was a small partnership for 2006. Having 10 or fewer partners who were all individuals is not enough to qualify for the small partnership exception. In addition, none of the individuals can be a nonresident alien. And respondent's proposed finding does not address the citizenship or residence of Arlington Farms' partners.

Because the record does not allow us to determine the identity of Arlington Farms' partners during 2006, we must consider which party bears the burden of proving those facts that establish our jurisdiction. We start with the "longstanding principle that the party invoking this Court's jurisdiction bears the burden of demonstrating that it exists." Dees v. Commissioner, 148 T.C. 1, 23 (2017) (Ashford, J., concurring in the result only). Application of that principle usually places the burden of proof on the taxpayer--who is, after all, the party who initially invoked the Court's jurisdiction by filing a petition. But when the Commissioner is the party arguing in favor of jurisdiction--for example, in response to a taxpayer's motion to dismiss--it may be appropriate to place on the Commissioner the burden of proving the facts that establish the Court's jurisdiction. See, e.g., Pietanza v. Commissioner, 92 T.C. 729, 736-737 (1989) (allocating to the

**[*36]** Commissioner, for the purpose of the taxpayer's motion to dismiss, the burden of proving the existence of a notice of deficiency and the date of its mailing), aff'd, 935 F.2d 1282 (3d Cir. 1991); see also Jimastowlo Oil, LLC v. Commissioner, T.C. Memo. 2013-195, at *6 (imposing on the Commissioner the burden of proving facts to establish the Court's jurisdiction to disallow deductions without prior TEFRA partnership proceedings).

We choose not to impose on respondent, however, the burden of proving Arlington Farms' qualification for the small partnership exception for purposes of petitioners' 2006 case. Respondent has sought information from petitioners about the constituency of Arlington Farms' partners. Petitioners, who ought to have better access to the relevant information than does respondent, either could not or would not provide it to him.[16] Under those circumstances, we will not require

---

[16]In March 2015, respondent provided petitioners with a request for the production of documents asking for, among other things, a copy of Arlington Farms' tax return for 2006 and supporting books and records. When petitioners failed to provide those documents, respondent moved to compel their production. We denied respondent's motion to compel production after being advised by petitioners during a conference call with the parties that they did not have any of the requested documents in their possession. After respondent found the entry for Arlington Farms in the Oregon secretary of state's business registry, he requested petitioners' answers to interrogatories concerning the partnership, including the number and identity of its partners. When petitioners failed to respond, respondent filed a motion to compel responses to those interrogatories. We issued an order granting respondent's motion and then denied a motion petitioners filed to

(continued...)

[*37] respondent to proceed at his peril in choosing the appropriate forum for challenging partnership items and create the risk of denying him any forum for contesting the loss deduction petitioners claimed for 2006 from Arlington Farms. See Harrell v. Commissioner, 91 T.C. 242, 247 (1988).

Harrell addressed a condition for the small partnership exception that Congress repealed in 1997. Under pre-1997 law, a partnership did not qualify as a small partnership, regardless of the constituency of its partners, unless it allocated all partnership items among its partners pro rata. The parties in Harrell agreed that the partnership in question met the requirement regarding the number and identity of its partners. Moreover, during the year in issue, the partnership allocated all of its items among those partners in the same proportions. The partnership agreement provided for disproportionate allocations in some circumstances, but those circumstances had not arisen during the year in question. The Commissioner argued that he ought to be able to determine compliance with the "same share" rule simply by looking at the partnership return and Schedules K-1, Partner's Share of Income, Deductions, Credits, etc. A majority of the Court agreed. The Court

_____

[16](...continued)
vacate that order. The record provides no evidence that petitioners thereafter responded to respondent's interrogatories. At trial, when the Court asked whether petitioners had any evidence that Arlington Farms was subject to the TEFRA rules, the response given was: "We don't know, Your Honor."

**[\*38]** reasoned that the Commissioner, in determining whether to follow the TEFRA procedures, should not be required to make that determination "at his peril." Id.

Even though Harrell's specific holding involved prior law and is thus irrelevant to petitioners' 2006 case, the general principle on which that holding rests remains viable and applies here. Jimastowlo Oil does not prevent us from applying the Harrell principle to impose on petitioners, rather than respondent, the burden of proving Arlington Farms' qualification as a small partnership for 2006. In Jimastowlo Oil, we imposed on the Commissioner the burden of establishing that a joint investment in oil and gas programs did not create a partnership. Jimastowlo Oil did not involve the qualification of an acknowledged partnership for the small partnership exception. The record before us identified the owners of the oil and gas programs and provided enough information about those programs to enable the Commissioner to conduct a partnership-level audit. Thus, the facts in Jimastowlo Oil did not raise the risk of whipsaw to the Commissioner by putting him in the position of learning, only after having initiated partnership proceedings, that he was correct to have addressed the deductions in issue at the partner level after all.

[*39] Because the record does not allow us to determine whether Arlington Farms qualified for the small partnership exception for 2006, our assignment of the burden of proof to petitioners requires that we accept respondent's position that the partnership did qualify so that we have jurisdiction to consider petitioners' entitlement to the loss deduction they claimed for that year from Arlington Farms. Because respondent's disallowance of the loss deductions petitioners claimed from both SNJ RNK RSJS and Arlington Farms were adjustments to nonpartnership items that gave rise to a deficiency for petitioners' 2006 taxable year, the oversheltered return rules of section 6234 do not apply for that year. We thus have jurisdiction to redetermine the deficiency respondent determined, as recomputed to reflect our dismissal of partnership items from the case.

### 3. Determination of Deficiency

Respondent's recomputed deficiency for petitioners' 2006 taxable year rests on the disallowance of the loss deductions they claimed from Arlington Farms and SNJ RNK RSJS. Petitioners offered no evidence to substantiate either loss.

The notice of deficiency for 2006 determined an addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662(a). Respondent's recomputed deficiency calculations provide only for an accuracy-related penalty for 2006. And on brief, respondent conceded that penalty.

**[*40]** Therefore, we will uphold respondent's recomputed deficiency for petitioners' 2006 taxable year except to the extent it includes the addition to tax and the penalty that respondent now concedes.

B.    2007

1.    Inapplicability of Oversheltered Return Rules

We agree with respondent that section 6234 does not apply for petitioners' 2007 taxable year.  Because they did not file a return for that year, the condition specified in section 6234(a)(1) (the taxpayer's filing of an oversheltered return) cannot be met for that year.

2.    Inability To Uphold Respondent's Recomputed Deficiency

Respondent argues that, because the oversheltered return rules do not apply for petitioners' 2007 taxable year, we can--and should--uphold his recomputed deficiency for that year.  Respondent reasons that, because petitioners did not file a 2007 return, "there is no net loss from partnership items to overcome." Therefore, he asserts, the adjustments underlying his recomputed deficiency for 2007 "are clearly sufficient to establish a deficiency".

Respondent bases his recomputed deficiency for 2007 on $173,658 of nonpartnership income, all of which appears to have been shown on the unsigned return petitioners provided to respondent.  But petitioners' unsigned 2007 return

**[*41]** also reported a net loss of $6,893,357 from partnerships covered by respondent's motion to dismiss.[17]  In asking us to uphold his recomputed deficiency for 2007, respondent thus asks that we sustain his adjustments to nonpartnership items while ignoring partnership losses.  In other words, he invites us to follow the approach we took in Munro and that Congress rejected when it "overrule[d]" our decision in that case with its enactment of the oversheltered return provisions.  See 1997 Blue Book at 370.

We decline the invitation.  Petitioners' failure to file a return for 2007 renders inapplicable the provisions Congress enacted to deal with the problem Munro illustrates.  But the inapplicability of section 6234 does not resuscitate Munro.  The staff of the Joint Committee on Taxation explained that, in overruling Munro when it enacted the Taxpayer Relief Act of 1997, Congress intended the IRS to "return to its prior practice of computing deficiencies by assuming that all TEFRA items whose treatment has not been finally determined had been correctly reported on the taxpayer's return."  1997 Blue Book at 370.  If we follow that approach here and accept the $6,893,357 net loss petitioners "reported" from

---

[17]Because SNJ, Ltd., was covered by respondent's motion to dismiss, we take him to accept the partnership's existence even though it did not file a partnership return for 2007.  Thus, petitioners are not seeking to avoid a deficiency for a year for which they failed to file a return by claiming a loss from a fictitious partnership.

[*42] TEFRA partnerships (albeit on an unsigned, unfiled return), the adjustments respondent seeks to make to various nonpartnership income items would not result in a deficiency.[18]

### 3.     Validity of Notices of Deficiency

As noted at the outset, our inability to uphold respondent's recomputed deficiency presents us with the choice of either concluding that we do not have jurisdiction or instead accepting our jurisdiction under section 6214(a) and concluding that--at least at this juncture--petitioners do not have a deficiency for their 2007 taxable year.  It might be tempting to think that Congress' overruling of Munro means that, in circumstances in which section 6234 does not apply, we should grant the result the taxpayers sought in that case.  They did not seek a determination that they did not have a deficiency for the taxable year in issue.  Instead, they asked that we dismiss the case for lack of jurisdiction.

---

[18]A claim of a loss from a TEFRA partnership reported on a signed and filed return may be more credible than one reported on an unsigned return provided to the Commissioner in the course of litigation in that facts stated in the former are attested to under penalties of perjury.  See sec. 6065.  Nonetheless, taxpayers do not forfeit their right to a prepayment forum concerning their individual income tax liabilities when they fail to file returns.  Similarly, petitioners' failure to file a 2007 return should not deprive them of a prepayment forum for contesting any adjustment of the loss they profess to have been allocated by SNJ, Ltd.  Contrary to respondent's assertion, petitioners' failure to file a 2007 return does not establish that "there is no net loss from partnership items to overcome."

[*43] Petitioners, as well, raise the issue of our jurisdiction. In fact, all of the assignments of error in their petition in docket No. 9539-15, which includes their 2007 taxable year, seem to go the question of our jurisdiction. And petitioners continue to raise the question of our jurisdiction in their briefs. To the extent we can decipher their arguments, however, they seem to go to respondent's alleged failure to consider the returns they filed rather than specifically to the need to adjust the reported partnership losses before deficiencies can be determined.

The taxpayers in Munro argued that the notice of deficiency they received was invalid because it did not reflect the Commissioner's determination of a deficiency. The taxpayers reasoned that the Commissioner could not have determined a deficiency without adjusting through partnership-level proceedings the losses that they claimed offset their nonpartnership income.

Because petitioners' case is distinguishable from Munro, the notices of deficiency they received for their 2007 taxable years cannot be invalid for the reasons on which the taxpayers based their argument in that case. The deficiencies stated in the notices respondent issued to petitioners do not purport to rest on the disallowance of partnership losses. When respondent issued the notices, he had no reason to know of petitioners' claim of partnership losses that, if valid, would eliminate the deficiencies he determined.

[*44] The fact that the adjustments reflected in the notices of deficiency did not result in deficiencies after taking into account the partnership loss deductions petitioners now claim does not require us to invalidate the notices. In deficiency cases, "it is not the existence of a deficiency but the Commissioner's determination of a deficiency that provides a predicate for Tax Court jurisdiction." Hannan v. Commissioner, 52 T.C. 787, 791 (1969).

In short, the notices of deficiency respondent issued to petitioners for their 2007 taxable years are not invalid for the reasons advanced by the taxpayers in Munro. But that, of course, does not establish the notices' validity. We must evaluate them under the generally applicable standards governing the validity of notices of deficiency.

In Dees v. Commissioner, 148 T.C. at 5, we distilled our prior caselaw into a "two-prong approach to the question of the validity of * * * [a] notice of deficiency." In the first step of the Dees approach, "we look to see whether the notice objectively put a reasonable taxpayer on notice that the Commissioner determined a deficiency in tax for a particular year and amount." Id. at 6. A notice that meets that test is valid, without the need for further inquiry. If instead the notice is "ambiguous", we wrote, "the party seeking to establish jurisdiction * * * [must] establish that the Commissioner made a determination and that the

[*45] taxpayer was not misled by the ambiguous notice." Id.  The notices of deficiency issued to petitioners for their 2007 taxable years satisfy the first prong of the Dees test.  The notices advised petitioners that respondent had determined that each of them had a deficiency of $15,825 for 2007.

The opinion of the Court of Appeals for the Ninth Circuit in Scar v. Commissioner, 814 F.2d 1363 (9th Cir. 1987), rev'g 81 T.C. 855 (1983), on which petitioners rely, does not give us reason to depart from our precedent in Dees.[19] The taxpayers in Scar received a notice of deficiency that advised them of the Commissioner's purported determination of a deficiency in a specified amount for a specified year.  The notice was accompanied by an explanation of the adjustments underlying the deficiency that referred to the disallowance of deductions that the taxpayers had not claimed, arising from a tax shelter in which they had not invested.  Another document included with the notice of deficiency indicated that the deficiency was pro forma in amount, arrived at by multiplying the purportedly disallowed deduction by the highest marginal tax rate.  The

---

[19]Because petitioners resided in Nevada when they filed their petitions in the cases before us, appeal of our decisions would normally be to the Court of Appeals for the Ninth Circuit.  See sec. 7482(b)(1).  To the extent that that court's caselaw differs from our own, we would defer to the Court of Appeals.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

**[*46]** document explained that a more accurate calculation of a deficiency was not possible at that time because the taxpayers' return was "unavailable". Id. at 1365.

The Court of Appeals for the Ninth Circuit, in contrast to this Court, agreed with the taxpayers' observation that "section 6212(a) authorizes the Commissioner to send a notice of deficiency only if he first 'determines that there is a deficiency.'" Id. at 1366. The Court of Appeals framed the issue before it as "whether a form letter that asserts that a deficiency has been determined, which letter and its attachments make it patently obvious that no determination has in fact been made, satisfies the statutory mandate." Id. at 1367. On the basis of the relevant statutory provisions, and in "the absence of evidence of contrary legislative intent," the court "conclude[d] that the Commissioner must consider information that relates to a particular taxpayer before it can be said that the Commissioner has 'determined' a 'deficiency' in respect to that taxpayer." Id. at 1368. "Because the Commissioner's purported notice of deficiency revealed on its face that no determination of tax deficiency had been made in respect to the Scars for the * * * [relevant] tax year," the court reasoned, the notice "did not meet the requirements of section 6212(a)." Id. at 1370.

The notices of deficiency issued to petitioners for their 2007 taxable years are readily distinguishable from the notice at issue in Scar. The correspondence

**[*47]** between several of the adjustments reflected in the notices of deficiency and the amounts shown on petitioners' unsigned return for 2007 shows that, in determining the deficiencies, respondent considered information related to petitioners (presumably reported to him by third parties). Respondent did not make his determinations in disregard of returns filed by petitioners; we have found that petitioners filed no return for 2007. Therefore, the opinion of the Court of Appeals for the Ninth Circuit in <u>Scar</u> does not require us to hold invalid the notices of deficiency respondent issued to petitioners for their 2007 taxable years.

We thus conclude that the notices of deficiency respondent issued to petitioners for their 2007 taxable years were valid, so that petitioners' filing of a petition in response to those notices gave us jurisdiction under section 6214(a) to redetermine the deficiencies reflected in the notices. Our exercise of that jurisdiction requires that we determine whether petitioners have a deficiency for 2007 and, of so, in what amount.

4.    <u>Redetermination of Deficiency</u>

The adjustments underlying respondent's deficiency, as recomputed to take into account our dismissal of partnership items from the case, would not result in a deficiency unless and until the losses petitioners report from TEFRA partnerships

**[*48]** are adjusted in partnership-level proceedings. Consequently, petitioners have no deficiency for 2007.

We see no respect in which respondent will be prejudiced by our determination that, at this stage in the consideration of petitioners' 2007 taxable years, they have no deficiency. Following a sufficient adjustment, through partnership-level proceedings, of the loss petitioners report from SNJ, Ltd., respondent will be able to assess tax on the nonpartnership income reflected in the notices of deficiency. Our conclusion that petitioners have no deficiency at this juncture does not rest on the determination of any particular amount of nonpartnership income. Therefore, unless petitioners file a return for 2007 before the completion of partnership-level proceedings for SNJ, Ltd., for the same year,[20] respondent will be unable to assess as a computational adjustment under section 6230(a)(1) the tax petitioners owe as a result of adjustment of the SNJ, Ltd. loss. In that event, further deficiency proceedings would presumably be required to determine petitioners' nonpartnership income for 2007. But our disposition of the present cases will not foreclose future deficiency proceedings. Section 6231(e)(1)

---

[20]Should petitioners file a 2007 return before the completion of any partnership-level proceedings concerning SNJ, Ltd., for that year and respondent determines that that return understates petitioners' nonpartnership income, respondent could then issue a notice of adjustment under sec. 6234(a).

**[\*49]** provides in part: "No judicial determination with respect to the income tax liability of any partner not conducted under this subchapter [sections 6221 through 6234] shall be a bar to any adjustment in such partner's income tax liability resulting from--(A) a proceeding with respect to partnership items under this subchapter".

C. 2008

1. Jurisdiction

Although respondent argues that "the oversheltered return provisions of I.R.C. § 6234 have a limited application" in these cases, he accepts that the rules of that section apply for petitioners' 2008 taxable year. We agree.

Petitioners' 2008 amended return reports no taxable income, and losses from partnerships. The partnership losses include a loss from RSJS Holdings, which respondent claims to be covered by the small partnership exception. For the reasons explained infra part II.C.2.b, we will accept that claim. But the remaining partnership losses were covered by respondent's motion to dismiss. Therefore, petitioners' 2008 amended return shows a net loss from TEFRA partnerships. Because that return shows no taxable income and a net loss from partnership items, it is an oversheltered return, within the meaning of section 6234(b).

[*50] The notice of deficiency respondent issued to petitioners for their 2008 taxable year reflects "determination[s] with respect to the treatment of" nonpartnership items, see sec. 6234(a)(2), including $4,072 of unreported rental and patronage income and $3,378,419 of capital gain from sources other than partnerships and the disallowance of the $5,288,778 NOL carryforward deduction from 2007 that petitioners claimed on their 2008 return, a net farm loss of $19,834, and the $14,743 claimed loss deduction from RSJS Holdings. Respondent's adjustments to nonpartnership items "do not give rise to a deficiency". See sec. 6234(a)(3). Those adjustments would increase petitioners' taxable income by $8,705,846 ($4,072 + $3,378,419 + $5,288,778 + $19,834 + $14,743). By contrast, the notice of deficiency states "Taxable Income Per Return or as Previously Adjusted" as -$9,865,540. But the nonpartnership adjustments of $8,705,846 do exceed the amount of negative taxable income that would have been shown on petitioners' 2008 amended return in the absence of partnership losses (-9,865,540 + $144,766 loss from RNS, Ltd. + $5,006,112 loss from SNJ, Ltd. = -$4,714,662). Therefore, the adjustments to nonpartnership items shown on the 2008 notice of deficiency "would give rise to a deficiency if there were no net loss from partnership items." See sec. 6234(a)(3). All four conditions for the application of section 6234 are thus met in regard to petitioners' 2008 taxable year.

**[\*51]** Respondent determined that the deficiency procedures of subchapter B of chapter 63 applied for petitioners' 2008 taxable year and, consistent with that determination, timely mailed a notice of deficiency to petitioners pursuant to section 6212. Because all of the conditions for the application of section 6234 were met, however, respondent's determination was erroneous. Consequently, under section 6234(h)(2), the notice of deficiency must be treated as a notice of adjustment under section 6234(a) and the petition that petitioners filed in response to that notice must be treated as an action brought under section 6234(c).

Because petitioners filed a petition that must be treated as one for redetermination of respondent's adjustments to their nonpartnership items for 2008, we have jurisdiction under section 6234(c) to "make a declaration with respect to" those items for that year that are neither partnership items nor affected items that require partner level determinations.

### 2. Exercise of Jurisdiction

Respondent advises us that, because "the oversheltered return provisions of I.R.C. § 6234 are applicable to * * * [petitioners'] 2008 tax year", we "should * * * issue a declaratory judgment as to the adjustments for the 2008 tax year." But he does not specify which adjustments he believes should be included in that judgment.

**[*52]** On brief, respondent concedes that he erred in including in his recomputed deficiency for 2008 the $5,150,888 of loss deductions petitioners claimed from RNS, Ltd., and SNJ, Ltd. (both items that were covered by his motion to dismiss), and that the remaining adjustments "are insufficient to establish a deficiency." Respondent also "concedes the Other Income (rents and patronage) adjustment of $4,072.00 for the 2008 tax year".

Therefore, we understand respondent to be seeking a declaratory judgment under section 6234(c) for petitioners' 2008 taxable year sustaining the following adjustments: (1) unreported capital gain of $3,378,419 from sources other than partnerships, (2) disallowance of the $14,743 loss deduction that petitioners claimed from RSJS Holdings, which respondent claims to be covered by the small partnership exception of section 6231(a)(1)(B)(i), (3) disallowance of a deduction for a net farm rental loss of $19,834 that petitioners reported on Schedule E, and (4) disallowance of the $5,288,778 NOL carryforward deduction from 2007 claimed on petitioners' 2008 amended return. In addition, we understand respondent to continue to assert that petitioners are liable for an addition to tax under section 6651(a)(1) and a section 6662(a) accuracy-related penalty for their 2008 taxable year. We address each of those items, in turn, below.

[*53]             a.        Capital Gain

                    i.        The Parties' Arguments

Respondent presents the following argument in support of his adjustment to

petitioners' 2008 capital gain:

> The amounts realized from the stock sales in 2008 * * * are
> established by records summonsed from * * * brokers.  In some
> instances, the summonsed brokerage records matched amount
> realized against cost basis to provide a net gain for stock transactions.
> Where such net gain (or loss) was provided in the summonsed
> records, it was accepted by respondent.  However, in most instances,
> the brokerage records provided only the sales price received as to
> each transaction.  Although the brokerage records also showed the
> petitioners' total stock purchases for the year, there was no way to
> connect any specific purchase to any specific sale.  Respondent
> solicited basis information and records from petitioners so as to
> account for the basis in determining gain.  Not receiving such
> information and records, respondent adopted a method to estimate
> basis.  The method used to estimate basis was to allow the total
> purchases during the year as the established cost for the total amount
> of stock sold during such year.  Thus, where net gain or loss was not
> provided by the brokerage records, respondent computed the gain by
> subtracting total purchases during the year from the total sales during
> the year.  Although not precise, it at least allowed petitioners an
> estimated basis, a concession that respondent was willing to make.
> At trial, consistent with their prior approach, petitioners failed to
> adduce any specific evidence of basis in the stock sales * * *.
> Certainly, they did not adduce evidence to establish that the actual
> basis was more than the amount respondent had established.
> According[ly], respondent's determinations * * * should be sustained.

Petitioners argue that "all of respondent's **re-computations** defy accepted

accounting principles.  It's patently evident that this involves stock transactions

[*54] extending over a period from 2005 through 2012".  We understand

petitioners to suggest that some of the stock sold during 2008 may have been

purchased in an earlier year.  Petitioners thus claim that respondent's simplifying

assumption

> defies all rationale in reason, as any stock existing over a year uses
> **FIFO principles,** and more importantly, **records from the
> brokerage houses subpoenaed by respondent, provided the "cost
> basis" as reported on reporting documents forms 1099 etc. that
> are contained in respondent's records.**  It appears that respondent is
> oblivious to all of this and all of the documents and support (which
> contains approximately **769 pages as <u>Attached</u>** to Petitioner's Motion
> for Order of Deposition and incorporated herein by reference) **all of
> which has been submitted to respondent on at least three different
> occasions since June 2014 (See ER pages 2419-3817),**[21]

Petitioners' reply brief includes a worksheet from a 2008 Schedule D,

Capital Gains and Loss, for one of their brokerage accounts (as well as for SNJ,

Ltd.) that shows a loss.  At the conclusion of their reply brief, petitioners state:

> Petitioners respectfully submit, that it should be self-evident, from the
> thousands of yearly stock transactions representing millions of
> dollars, that respondent's argument as to "cost basis" and "at risk" to
> disallow documented losses, is specious, if not scurrilous, and at the
> very least jejune, as we are talking about the majority of losses
> pursuant to and dictated from stock transactions as recognized by
> respondent, ergo, inherently the basis established by the value of the
> stock and SEC requirements establishing the "at risk" and "cost basis"
> thereof.

---

[21]The paragraph of petitioners' brief from which we quote ends in mid-sentence.

**[*55]**                              ii.    <u>Analysis</u>

Respondent is incorrect in claiming that he used in his calculations any

information about stock basis provided by petitioners' brokers.  Respondent's

calculation of petitioners' gain from their Interactive Brokers account makes no

use of the transaction-by-transaction list of basis and gain or loss included in the

Activity Statement provided to him.  Instead, respondent simply compares total

purchases to total proceeds.  Although the Activity Statement provides data that

respondent failed to use, that statement offers no instructions on how to interpret

that data, the meaning of which is not obvious.[22]  Because it is not clear how

respondent should have used the data, we do not fault him for failing to take that

data into account in computing a net gain from the activity in petitioners'

Interactive Brokers account.

Petitioners correctly observe that respondent's method of estimating basis is

unauthorized.  A taxpayer attempting to use that method would not meet his

burden of proof.  Section 1.1012-1(c)(1), Income Tax Regs., provides:

> If shares of stock in a corporation are sold or transferred by a
> taxpayer who purchased or acquired lots of stock on different dates or
> at different prices, and the lot from which the stock was sold or

---

[22]For example, the inclusion in the statement of transactions with both positive and negative amounts suggests that it reports different types of transactions, but the statement does not identify those differences.

**[*56]** transferred cannot be adequately identified, the stock sold or transferred shall be charged against the earliest of such lots purchased or acquired in order to determine the cost or other basis of such stock * * *.

But petitioners' critique of respondent's method ignores the fact that he employed that method as a concession. He could have treated as gain petitioners' full amount realized and left it to them to establish bases other than zero. It has long been established that taxpayers bear the burden of proving the basis of property claimed as an offset to the amount realized upon its sale. See, e.g., Burnet v. Houston, 283 U.S. 223, 227-228 (1931). Petitioners cannot complain that respondent has been more generous than he had to be. And they have not demonstrated that the record supports higher basis amounts than respondent has allowed. Even if the Schedule D worksheet that petitioners reproduced in their reply brief is in the record, it was prepared by petitioners and thus cannot serve as substantiation of the basis amounts it shows. We therefore sustain respondent's adjustment to petitioners' 2008 capital gain from sources other than partnerships.

### b. Loss From RSJS Holdings

Respondent claims, on the basis of the Court's having granted his motion to dismiss partnership items from the case, that we have jurisdiction to disallow the loss deduction petitioners claimed for 2008 from RSJS Holdings. As explained

[*57] supra part II.A.2.b, however, respondent overstates the effect of our favorable ruling on that motion. Our jurisdiction to determine petitioners' loss from RSJS Holdings remains an open question.

We have no evidence about the constituency of RSJS Holdings' partners during 2008. On the basis of an unsigned 2006 partnership return that petitioners provided to him, respondent proposed a finding that "RSJS Holdings Limited Partnership had two partners in the 2006 tax year, petitioners Ritchie N. Stevens and petitioner Julie A. Keen-Stevens". As noted above, petitioners did not formally respond to respondent's proposed findings of fact. Because of petitioners' failure to provide grounds for objection to respondent's proposed finding, we can accept that petitioners were RSJS Holdings' only two partners during 2006. See Ashkouri v. Commissioner, T.C. Memo. 2019-95, at *56 n.16. It would follow that RSJS Holdings was covered by the small partnership exception of section 6231(a)(1)(B)(i) for that year. But RSJS Holdings' qualification as a small partnership for 2006 does not establish that it also qualified for 2008: A partnership's qualification for the small partnership exception must be determined year by year. Sec. 301.6231(a)(1)-1(a)(3), Proced. & Admin. Regs. ("The determination of whether a partnership meets the requirements for the exception

**[\*58]** for small partnerships * * * shall be made with respect to each partnership taxable year.").

As was the case in regard to Arlington Farms' qualification as a small partnership for 2006, RSJS Holdings' qualification for 2008 presents us with the choice of either assigning the burden of proof to respondent or, instead, applying the principle of Harrell v. Commissioner, 91 T.C. 242.  Applying that principle here would necessarily stretch it further than we did in regard to Arlington Farms' qualification as a small partnership for 2006.  In determining whether Arlington Farms was a small partnership for 2006, we had reason to accept that it had fewer than 10 partners who were all individuals.  The only unavoidably open question was whether any of those individuals were nonresident aliens.  By contrast, the record provides no information at all regarding the constituency of RSJS Holdings' partners during 2008.  Further, the record does not establish how much effort respondent expended in trying to obtain that information.  Even so, we accept that petitioners had better access than respondent does to information about the constituency of RSJS Holdings' partners.  And petitioners have offered no evidence to establish that RSJS Holdings was subject to the TEFRA rules for 2008.  Therefore, we will again apply the Harrell principle and accept respondent's

[*59] claim that RSJS Holdings was a small partnership, excepted from the TEFRA rules, for 2008.

Because petitioners presented no evidence to substantiate the loss they reported from RSJS Holdings for 2008, we will uphold respondent's adjustment disallowing any deduction for that loss in full.

### c.    Net Farm Rental Loss

Similarly, petitioners presented no evidence to substantiate the net farm rental loss they reported on their 2008 Schedule E.  Therefore, we will also uphold respondent's disallowance of any deduction for that loss.

### d.    NOL Carryover

On the premise that "the evidence established that petitioners did not have a net operating loss in the 2005, 2006, and 2007 tax years," respondent argues "there can be no deduction in the 2008 tax year for a net operating loss carried forward from a previous year."  That premise, however, is incorrect.  The issue of whether petitioners incurred an NOL for 2007 turns in significant part on the amount and nature of any loss allocated to them by SNJ, Ltd.  And those questions are not before us in this proceeding.

Any NOL carryover from petitioners' 2007 taxable year to their 2008 year depends on the amount of any loss allocated to them for 2007 by SNJ, Ltd.

**[\*60]** Consequently, the deduction allowed to them for 2008 by section 172(a) is an affected item that "cannot be determined before final resolution and adjustment of the partnership items to which * * * [it] relate[s]." See GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000); see also Maxwell v. Commissioner, 87 T.C. 783, 792 (1986) ("Affected items depend on partnership level determinations, cannot be tried as part of the personal tax case and must await the outcome of the partnership proceeding.").

Because the amount of any NOL carryover from petitioners' 2007 taxable year to their 2008 taxable year cannot be determined before the determination of any loss to which they are entitled from SNJ, Ltd., for 2007, we cannot make any "declaration" concerning their 2008 NOL carryforward deduction in this proceeding. If petitioners' NOL carryforward to 2008 is reduced or eliminated as a result of the adjustment, through TEFRA procedures, to one or more of its partnership item components, respondent will be able to assess the resulting increase in petitioners' tax either by means of a computational adjustment or through deficiency procedures. See sec. 6230(a).

e.     Addition to Tax and Penalty

Section 6651(a)(1) provides for an addition to tax when a taxpayer fails to file a timely return. The addition to tax is a prescribed percentage of the amount

[*61] of tax required to be shown on the return. (The prescribed percentage increases, up to a stated maximum, according to the extent of the delinquency of the taxpayer's return.)

This Court has jurisdiction to redetermine a taxpayer's liability for an addition to tax under section 6651(a)(1) only to the extent it is "attributable to a deficiency in tax described in section 6211". Sec. 6665(b)(1).

Because the notice of deficiency respondent issued to petitioners for their 2008 taxable year reflected an erroneous determination that the deficiency procedures prescribed in subchapter B of chapter 63 apply, we have treated that notice as a notice of adjustment under section 6234(a). Sec. 6234(h)(2). Respondent thus did not issue for petitioners' 2008 taxable year a notice that was valid as a notice of deficiency. Consequently, we have no jurisdiction to redetermine petitioners' liability for any addition to tax for that year under section 6651(a)(1).

Section 6662(a) provides for an accuracy-related penalty equal to 20% of an "underpayment" attributable to specified types of misconduct. The definition of "underpayment" is similar to the definition of "deficiency"--generally equal to the excess of the tax imposed over the tax shown on the taxpayer's return. See sec. 6664(a). We are unable in this proceeding to determine the extent, if any, by

**[*62]** which the amount of tax imposed on petitioners for their 2008 taxable year exceeds the tax shown on the return they filed for that year. Thus, we cannot determine whether they had an underpayment for that year or whether they are liable for an accuracy-related penalty. If partnership-level proceedings establish an underpayment in petitioners' 2008 income tax, respondent will be able to assess an accuracy-related penalty as a computational adjustment without deficiency procedures. See sec. 6230(a)(1) and (2)(A)(i); sec. 301.6231(a)(6)-1(a)(1), Proced. & Admin. Regs. ("A computational adjustment includes * * * any penalty * * * that relates to an adjustment to a partnership item.").

### f.     Summary

For the reasons explained above, we will "make a declaration" under section 6234(c) for petitioners' 2008 taxable year that petitioners recognized $3,378,419 of unreported capital gain from sources other than partnerships and that petitioners are not entitled to the deductions for the $14,743 loss from RSJS Holdings or the net farm rental loss of $19,834 they claimed for that year.

### D.     2009

#### 1.     Inapplicability of Oversheltered Return Rules

Respondent takes the position that the oversheltered return rules of section 6234 apply for petitioners' 2009 taxable year. He thus seeks a declaratory

[*63] judgment under section 6234(c) disallowing the NOL carryforward deduction from 2008 that petitioners claimed on their 2009 amended return as well as the loss from RSJS Holdings shown on that return. Although respondent did not issue a notice of adjustment under section 6234(a) for 2009, he asks that the notice of deficiency he sent to petitioners for that year be treated as a notice of adjustment by reason of section 6234(h)(2).

In determining the applicability of section 6234 for petitioners' 2009 taxable year, we must first identify which of the two returns they filed for that year is to serve as the frame of reference. As the Court of Appeals for the Fifth Circuit observed when it affirmed an order of this Court granting the Commissioner's motion for summary judgment in Jones v. Commissioner, 338 F.3d 463, 466 (5th Cir. 2003): "The IRS has discretion to accept or reject an amended return." Because respondent used petitioners' amended return for 2009 as the basis for calculating his recomputed deficiency, we will treat respondent as having accepted petitioners' amended 2009 return and use that return, rather than the one respondent received in October 2013, as the basis for determining the applicability of the oversheltered return rules.

**[\*64]** Petitioners' amended return for 2009 is an oversheltered return, within the meaning of section 6234(b). It shows no taxable income and a net loss of $990,360 from partnership items.[23]

We next consider whether respondent's notice of deficiency for 2009 reflects "a determination with respect to the treatment of items (other than partnership items)" for that year. See sec. 6234(a)(2). Toward that end, we must compare the "adjustments" underlying the deficiency with the amounts shown on petitioners' amended return for 2009. (Section 6234(a)(3), which considers the

---

[23]Our computation of the net loss from partnership items shown on petitioners' amended return for 2009 includes the following items from SNJ, Ltd.: interest of $1,117, dividends of $24,904, capital gain of $12,903, Form 4797 loss of $15,226, and nonpassive loss of $84,183. It also includes interest of $4 and the nonpassive loss of $668,696 from RNS, Ltd., the nonpassive loss of $255,302 from Kentucky Partners, the $5,902 passive loss from Dart 5485 LLC, and interest of $21 from Coy Products. Respondent's motion to dismiss for lack of jurisdiction did not include the income petitioners reported from Coy Products for 2009, apparently because that income appeared on Schedule B rather than Schedule E. But the loss from Coy Products that petitioners reported on Schedule E for 2010 is covered by respondent's motion to dismiss. In support of his treatment of Coy Products' 2010 loss as a partnership item, respondent observed in his motion that "[p]etitioners have not provided a copy of a Form 1065 for Coy Products for 2010; nor have they provided any information concerning the number and type of partners." Because we find in the record no return for Coy Products for 2009, either, we conclude that its income for that year is also a partnership item that reduces the net loss from partnership items shown on petitioners' 2009 amended return. Finally, because respondent argues that RSJS Holdings was a small partnership for 2009, we have excluded from our calculation of the net partnership loss shown on petitioners' 2009 amended return the $3,506 passive loss shown on that return from RSJS Holdings.

[*65] consequences of "the adjustments resulting from * * * [the] determination" referred to in section 6234(a)(2), makes it clear that the "determination" must be one that results in an adjustment of a nonpartnership item shown on the taxpayer's return.)

The deficiency stated in the notice of deficiency for 2009 rested on the following adjustments: allegedly unreported wages, dividends, rent and patronage income, and interest, and allowed Schedule E, rental, and capital loss deductions, itemized deductions, and exemptions. The notice of deficiency does not identify the source of the $5,640 Schedule E loss deduction allowed. Therefore, to the extent that it reflects an adjustment to an amount petitioners reported, we will treat it as an adjustment to a partnership item. The "adjustments" to wages, dividends, and taxable interest match amounts shown on petitioners' 2009 return. The net rental loss deduction allowed exceeds the amount shown on petitioners' return by $1,678 ($7,427 – $5,749). The rent and patronage income of $2,950 is reported as "Other income" on petitioners' return. Because all of the capital gain petitioners reported relates to SNJ, Ltd., we will assume that the capital loss deduction respondent would allow is also a partnership item. The itemized deductions and exemptions shown on petitioners' return exceed the amounts respondent allowed by $1,574 and $6,085, respectively. Thus, the net effect of respondent's

[*66] adjustments to nonpartnership items for petitioners' 2009 taxable year would increase their taxable income for the year by $5,981 ($1,574 + $6,085 – $1,678).

Because respondent's calculation of a recomputed deficiency for 2009 shows taxable income per petitioners' return of –$10,223,895, the adjustments to nonpartnership items shown on respondent's notice of deficiency for 2009 would not result in a deficiency. But those adjustments would not result in a deficiency regardless of the $990,360 loss from partnership items that petitioners reported. Without the partnership loss, their reported taxable income would have been –$9,233,535 (–$10,223,895 + $990,360). Adjustments to nonpartnership items that would increase taxable income by $5,981 would be insufficient to result in a deficiency. Because the adjustments to nonpartnership items shown in the notice of deficiency for 2009 would not "give rise to a deficiency [even] if there were no net loss from partnership items", we cannot, by reason of section 6234(h)(2), treat the notice of deficiency as a notice of adjustment. See sec. 6234(a)(3).

### 2.    Deficiency Jurisdiction; Validity of Notice of Deficiency

Having concluded that we lack jurisdiction to issue a declaratory judgment under section 6234(c) for petitioners' 2009 taxable year, we now consider our deficiency jurisdiction under section 6214(a). Respondent acknowledges that his recomputed deficiency for 2009 reflects the disallowance of "the entire net

[*67] partnership loss claimed on petitioners' Schedule E", including losses from TEFRA partnerships that cannot be adjusted in the absence of partnership-level proceedings. Respondent also acknowledges that, "without adjustment of the net partnership loss attributable to * * * [the TEFRA] partnerships, the other adjustments in the recomputed deficiency for the 2009 tax year are insufficient to establish a deficiency."

Because the existence of a deficiency for petitioners' 2009 taxable year depends on the validity of partnership losses whose adjustment requires partnership-level proceedings, we cannot uphold respondent's recomputed deficiency for that year. (Indeed, respondent does not ask that we do so.) We are thus faced again with the choice of either concluding that we lack jurisdiction or exercising jurisdiction under section 6214(a) and concluding that, as of now, petitioners do not have a deficiency for 2009. As was the case in regard to petitioners' 2007 taxable year, so, too, for 2009: The choice turns on the validity of the notice of deficiency for the year.

The notice of deficiency respondent issued to petitioners for 2009, like the notices of deficiency for 2007, satisfies the first prong of the Dees test. The notice advised petitioners that he had determined a deficiency for their 2009 taxable year of $169,869.

**[\*68]** It is not clear that respondent took into account either petitioners' originally filed 2009 return or their amended return for that year in determining the deficiency in the notice. The accompanying explanations of the determined adjustments, in comparing "per exam" and "per return" amounts, state each of the latter as zero. The noncomputational adjustments on which respondent purported to have determined the deficiency would "increase" specified income items only up to the amounts actually shown on petitioners' returns.

If, however, respondent failed to take into account either of petitioners' returns in determining the deficiency, that failure is not apparent on the face of the notice. Consequently, any such failure would thus not affect the validity of the notice under Dees. The first prong of the Dees test assesses the impact the notice would have on a "reasonable taxpayer". Dees v. Commissioner, 148 T.C. at 6. Thus, in applying that prong of the test, we cannot look beyond the four corners of the notice itself. And we consider its impact not on the actual taxpayer or taxpayers to whom the notice is addressed (who presumably would know whether they had filed a return for the year in issue) but instead on a hypothetical taxpayer. The test, in other words, is objective: considering the content of the notice rather than the subjective impact it would have on the actual recipient. And any failure by respondent to consider the returns petitioners filed for 2009 would not be

[*69] apparent to a hypothetical taxpayer considering only the notice of deficiency itself. The notice does not acknowledge the filing of a return, but a hypothetical taxpayer could readily assume that the actual taxpayer had not filed a return for the year. It is thus not manifest from the face of the notice that petitioners filed returns not reflected in the notice. Consequently, the notice is valid under Dees.

Moreover, Pearce v. Commissioner, 95 T.C. 250 (1990), rev'd, 946 F.2d 1543 (5th Cir. 1991), establishes that the Commissioner's failure to take into account a taxpayer's return for a year does not invalidate a notice of deficiency issued for the year. Pearce involved the liability of transferees of a decedent for tax allegedly owed by the decedent. Although the decedent had filed a return for the year in issue, the Commissioner had sent that return back to him, keeping only the first page. During an examination for the year for which the return had been filed, the Commissioner tried without success to obtain a full copy of the return. The transferees filed a motion to dismiss on the grounds that, because the Commissioner had ignored the decedent's return in preparing the notice of deficiency, he had not made the statutorily required "determination".

We accepted in Pearce that the Commissioner had determined a deficiency in the decedent's tax as though he had not filed a return and that, in that regard, his determination was incorrect. We reasoned that considering whether a taxpayer

**[\*70]** had filed a return is simply part of the process of determining a deficiency. An error in that determination is no different from other errors in determining a deficiency. Any such errors may lead to our redetermination of the erroneous deficiency, but they do not deprive us of jurisdiction to make that redetermination.

In denying the transferees' motion to dismiss, we concluded that their reliance on the opinion of the Court of Appeals for the Ninth Circuit in Scar was misplaced. In distinguishing Scar, we wrote: "In Scar, there was never a question whether a return had been filed. It was clear from the face of the notice of deficiency that a return had been filed and was being ignored for reasons of administrative expediency." Pearce v. Commissioner, 95 T.C. at 255.

Like the notice of deficiency at issue in Pearce, and in contrast to the notice addressed in Scar, the notice of deficiency respondent issued to petitioners for their 2009 taxable year gives no indication that he was knowingly disregarding either petitioners' originally filed return or their amended return for that year. Therefore the opinion of the Court of Appeals for the Ninth Circuit in Scar does not give us reason to depart from our own precedents in Pearce and Dees. The Court of Appeals emphasized in Scar v. Commissioner, 814 F.2d at 1368, that it had no need to "look behind the notice sent to the taxpayers to determine its invalidity." Thus, the court's opinion left open the question of whether defects in

[*71] procedure not apparent on the face of a notice of deficiency would require its invalidation. Indeed, it is not even clear that the Court of Appeals would view as a procedural defect the Commissioner's failure to consider a taxpayer's return, as long as the determined deficiency was based on "information that relates to" the taxpayer to whom the notice of deficiency is addressed. See id.

We thus reach the same conclusion in regard to petitioners' 2009 taxable year as we did in regard to 2007. The notice of deficiency respondent issued to petitioners for 2009 was valid despite the possibility that respondent failed to consider either of the returns petitioners filed for the year in determining the deficiency in the notice. Consequently, petitioners' filing of a petition in response to the notice gives us jurisdiction under section 6214(a) to redetermine the deficiency in the notice.

### 3. Redetermination of Deficiency

Exercise of our deficiency jurisdiction requires that we redetermine whether petitioners have a deficiency for 2009 and, if so, in what amount. We have already established that the adjustments in the notice would not result in a deficiency unless and until the losses petitioners claim from TEFRA partnerships are adjusted in partnership-level proceedings. Thus, we can only conclude that petitioners have no deficiency for 2009.

**[\*72]** That conclusion may not leave respondent without recourse to pursue the adjustments in regard to which he sought a declaration under section 6234(c). If the NOL carryforward from 2008 that petitioners reported on their 2009 return is reduced or eliminated as a result of adjustments to its partnership item components, respondent will be able to assess the resulting increase in petitioners' tax liability either by means of a computational adjustment or through deficiency procedures. See sec. 6230(a). If, however, respondent is correct that petitioners' loss from RSJS Holdings is not a partnership item, the period of limitations may bar the assessment of any additional tax that would result from the disallowance of a deduction for that loss. See sec. 6501(a).

E.    2010

1.    Inability To Uphold Recomputed Deficiency

Respondent asks that we uphold his recomputed deficiency for petitioners' 2010 taxable year. For the reasons explained below, we agree with respondent that we have jurisdiction over that year under section 6214(a) rather than section 6234(c), but we conclude that petitioners have no deficiency for the year.

Respondent claims that his adjustments to nonpartnership items for petitioners' 2010 taxable year "are sufficient to establish a deficiency without adjusting any partnership items". Arithmetically, the $11,332,509 of adjustments

**[\*73]** underlying respondent's recomputed deficiency would result in positive taxable income. (Petitioners' 2010 return in effect shows taxable income of −$10,814,841.) But the only adjustment underlying respondent's recomputed deficiency for 2010 that appears on the notice of deficiency for that year is an increase to capital gain of $730,356. Respondent did not seek to amend his answer to assert the other adjustments underlying his recomputed deficiency for 2010. And the adjustment to capital gain, by itself, would not result in a deficiency.

Even if respondent had amended his answer to assert those adjustments taken into account in calculating his recomputed deficiency that were not shown on the notice of deficiency, we would have been unable to uphold respondent's recomputed deficiency. The recomputed deficiency reflects a purported disallowance of the $10,188,499 NOL carryfoward deduction petitioners claimed on their 2010 return. That NOL carryforward consists largely of losses from TEFRA partnerships reported for prior years. Because the NOL carryforward to 2010 is "affected by" partnership items, it is an "affected item", within the meaning of section 6231(a)(5). Consequently, the amount of any NOL carryforward deduction to 2010 to which petitioners are entitled "cannot be determined before final resolution and adjustment of the partnership items to

**[\*74]** which \* \* \* [it] relate[s]."  See GAF Corp. & Subs. v. Commissioner, 114 T.C. at 521.  The adjustments reflected in respondent's recomputed deficiency for 2010 other than the purported disallowance of petitioners' claimed NOL carryforward deduction would not result in a deficiency.

### 2.    Inapplicability of Oversheltered Return Rules

Just as we cannot uphold respondent's recomputed deficiency, we cannot uphold the adjustments underlying that deficiency by issuance of a declaratory judgment under section 6234(c).  Section 6234(h)(2) does not allow us to treat the notice of deficiency for 2010 as a notice of adjustment under section 6234(a) because the purported adjustments to nonpartnership items shown on the notice of deficiency would not result in a deficiency even if petitioners had not reported a net loss from partnership items.  See sec. 6234(a)(3).

To determine the extent to which the adjustments shown in the notice of deficiency for petitioners' 2010 taxable year reflect adjustments to nonpartnership items, we must compare them to the amounts reported on petitioners' 2010 return.  Most of the adjustments are not adjustments at all.  The purported adjustments for Schedule C gross receipts, dividends, interest, rental loss, and Form 4797 gain match amounts reported on petitioners' return.  We cannot find on that return, however, the $51 of other income respondent took into account in determining the

[*75] deficiency. The return also shows no adjustment for self-employment tax. It claims itemized deductions in an amount that is $4,338 less than the amount respondent allowed ($75,475 – $71,137), but its claimed exemptions are $3,650 more than the amount respondent allowed ($18,250 – $14,600). Thus, to the extent the notice of deficiency adjusted nonpartnership items shown on petitioners' return, the effect of those adjustments was to increase petitioners' taxable income by $729,079 ($51 other income + $730,356 capital gain – $640 self employment tax adjustment – $4,338 additional itemized deductions + $3,650 of disallowed exemptions).

Would the adjustments to nonpartnership items shown on the notice of deficiency result in a deficiency if petitioners had not reported a net loss from partnership items? The partnership items reported on petitioners' 2010 return result in a net loss of $109,569.[24] Without that loss, the deductions claimed on their return would still have exceeded their reported income by $10,705,272

---

[24]Our computation of the net loss from partnerships that petitioners reported for 2010 includes the nonpassive losses from RNK Family Limited Partnership and Coy Products ($921 and $6,549, respectively) and the following items from SNJ, Ltd.: interest of $84, dividends of $24,149, capital gain of $243, $12,872 of gain reported on Form 4797, and the nonpassive loss of $139,447. Because respondent argues that RSJS Holdings was a small partnership for 2010, as well as for 2009, we have excluded from our calculation of the net partnership loss on petitioners' 2010 return the $20,190 reported loss from that partnership.

**[\*76]** ($10,814,841 – $109,569). Thus, adjustments to nonpartnership items that would increase taxable income by $749,079 would not be enough to result in a deficiency even without the net loss from partnership items. Because one of the conditions specified in section 6234(a)(3) is not met, we cannot treat respondent's notice of deficiency for 2010 as a notice of adjustment under section 6234(a) that would give us jurisdiction to make a declaratory judgment concerning petitioners' 2010 nonpartnership items.

### 3. Validity of Notice of Deficiency; Exercise of Deficiency Jurisdiction

Our inability to either uphold respondent's recomputed deficiency for petitioners' 2010 taxable year or issue a declaratory judgment upholding the adjustments on which respondent based that deficiency leaves us, again, with the choice of concluding that we have no jurisdiction or accepting jurisdiction under section 6214(a) and determining that petitioners have no deficiency for the year. As with petitioners' 2007 and 2009 taxable years, the choice turns on the validity of the notice of deficiency.

We conclude that the notice of deficiency respondent issued to petitioners for their 2010 taxable year is valid for the same reasons we determined the notice for 2009 to be valid. The notice advised petitioners of respondent's determination

**[*77]** of a deficiency of $230,772 for their 2010 taxable year. The notice thus satisfies the first prong of the Dees test. As with the 2009 notice, it is not clear that respondent took into account the return petitioners filed for 2010 in determining the deficiency for that year; but, if he did not, that failure is not apparent on the face of the notice and thus would not affect its validity. Because the notice of deficiency for petitioners' 2010 taxable year was valid, their filing of a petition in response to the notice gives us jurisdiction under section 6214(a) to redetermine the deficiency.

As noted above, the only adjustment underlying respondent's recomputed deficiency for 2010 that appears in the notice of deficiency for that year would not result in a deficiency. Again, our only recourse is to conclude that petitioners have no deficiency for their 2010 taxable year. Because petitioners do not have a deficiency for that year, they are not liable for an addition to tax under section 6651(a)(1). See sec. 6665(b)(1). Further, because we have determined that the tax imposed on petitioners for their 2010 taxable year does not exceed the tax shown on the return they filed for the year, it follows that petitioners have no underpayment for the year, within the meaning of section 6664(a), and, consequently, are not liable for an accuracy-related penalty under section 6662(a).

**[*78]** Again, respondent may not be foreclosed from pursuing at least some of the adjustments reflected in his recomputed deficiency for petitioners' 2010 taxable year. If the NOL carryforward from 2009 that petitioners reported on their 2010 return is reduced or eliminated as a result of adjustments to its partnership item components, respondent will be able to assess the resulting increase in petitioners' tax, possibly without deficiency procedures. See sec. 6230(a). The period of limitations on assessment provided in section 6501(a), however, may bar the assessment of any additional tax that would result from the adjustments of nonpartnership items taken into account in respondent's recomputed deficiency.

F.    2011

1.    Inapplicability of Oversheltered Return Rules

Respondent also asks that we uphold his recomputed deficiency for petitioners' 2011 taxable year. He agues that section 6234 cannot apply to that year because petitioners did not file their return for that year "prior to the commencement of these cases".

On the facts before us, we need not decide whether petitioners' late-filed 2011 return satisfies the requirement of section 6234(a)(1).[25] Regardless of

---

[25]We observe, however, that nothing in sec. 6234 prescribes a deadline for the filing of an oversheltered return. Moreover, we can imagine circumstances in

(continued...)

[*79] whether we can take into account petitioners' return, the fourth requirement for applying section 6234 is not met:  The adjustments to nonpartnership items in the notices of deficiency would not give rise to deficiencies even if petitioners' 2011 return had not reported a net loss from partnership items.  See sec. 6234(a)(3).  Petitioners' 2011 return reports all of the nonpartnership income on which respondent based his deficiencies other than $4,709 of pension income and $26 of rental and patronage income.[26]  That return also reports a loss of $566,999

---

[25](...continued)
which it would be in the Commissioner's interest to apply sec. 6234 for a year for which the taxpayer filed a return only after filing a petition with this Court in response to a notice of deficiency.  If the taxpayer's return failed to report all of the nonpartnership income on which the Commissioner based his deficiency and also reported a net loss from partnerships sufficient to offset all of his nonpartnership income (including the allegedly unreported income), we would be unable to uphold the deficiency, for the reasons explained supra part II.B.2.  If sec. 6234 did not apply, the Commissioner would be left with no obvious means of assessing tax on the income omitted from the taxpayer's return.

[26]Because the $25 adjustment for "Sch E1--Rents received" taken into account in computing petitioners' deficiencies for 2011 does not appear in respondent's computation of their recomputed deficiency, we assume that item reflects partnership income.  Similarly, because respondent based his recomputed deficiency on $2,496 of taxable interest (equal to the nonpartnership interest petitioners reported on their 2011 return), we assume that the additional $34 of interest taken into account in computing petitioners' deficiencies ($2,530 – $2,496) reflects interest from partnership sources.  Because respondent's recomputed deficiency makes no adjustment for capital gain, we assume that all of the capital gain taken into account in computing petitioners' deficiencies was from partnership sources.

[*80] from SNJ, Ltd., which was covered by respondent's motion to dismiss, and

an NOL carryforward of $10,750,110. Because of the NOL carryforward, an

increase of $4,735 in petitioners' nonpartnership income for 2011 ($4,709 + $26)

would not have given rise to a deficiency even if petitioners had not reported a

loss from SNJ, Ltd.

### 2. Inability To Uphold Recomputed Deficiency

The inapplicability of the oversheltered return rules for petitioners' 2011

taxable year, however, does not mean that we can do as respondent suggests and

uphold his recomputed deficiency for the year. Respondent's recomputed

deficiency, to the extent not conceded, rests entirely on nonpartnership income

petitioners reported on their 2011 return.[27] Respondent thus asks that we allow

him to assess and collect tax on that income without regard to the losses reported

on that return, even though the adjustment of those losses would require

partnership proceedings.

---

[27]On brief, respondent concedes the $26 adjustment to rental and patronage income and also concedes that petitioners' pension income for 2011 was $240,000, as reported on their 2011 return, rather than $244,709, as determined in the notice of deficiency. Respondent's adjustment of $54,142 for "Sch C--Income" equals the sum of the gross income petitioners reported on Schedule C ($8,929) and the "Other Income" of $45,213 included on line 21 of Form 1040.

**[*81]** By including in his motion to dismiss the $566,999 loss from SNJ, Ltd., that petitioners reported for 2011, respondent conceded that he cannot adjust it without partnership-level proceedings concerning SNJ, Ltd., for 2011. And the NOL carryforward from 2010 of $10,750,110 reported on petitioners' 2011 return, consisting largely of losses from TEFRA partnerships reported for prior years, is an affected item that "cannot be determined before final resolution and adjustment" of its partnership item components. See GAF Corp. & Subs. v. Commissioner, 114 T.C. at 521.

   3. Deficiency Jurisdiction

 Unable to uphold respondent's recomputed deficiency for petitioners' 2011 taxable year, we face again the familiar choice between declining jurisdiction or instead determining that petitioners have no deficiency. We conclude that the notices of deficiency for 2011 are valid for the same reason that the notices for 2007 are valid. The notice issued to Mrs. Stevens advised her that respondent had determined a deficiency in her Federal income tax for 2011 of $107,796. And the notice issued to Dr. Stevens for that year advised him of respondent's determination of a deficiency of $41,764. The notices thus satisfy the first prong of the Dees test. Because petitioners did not file a return for 2011 until after respondent issued the notices of deficiency, we face no issue, in assessing the

**[\*82]** validity of those notices, of respondent's possible disregard of previously filed returns. And unlike the notice of deficiency at issue in <u>Scar</u>, the notices respondent issued to petitioners for 2011 give no indication on their faces that respondent determined the deficiencies on the basis of information that was irrelevant to petitioners' tax liability for the year.

Because we conclude that respondent issued valid notices of deficiency to petitioners for their 2011 taxable year, petitioners' filing of a petition for redetermination in response to those notices established our deficiency jurisdiction over the year under section 6214(a). Because we cannot uphold respondent's recomputed deficiency for the year, we are again left with no recourse, in exercising our established jurisdiction, other than to conclude that petitioners have no deficiency for 2011.

From our conclusion that petitioners' have no deficiency for 2011, it follows that they are not liable for an addition to tax under section 6651(a)(1). On brief, respondent concedes the additions to tax under sections 6651(a)(2) and 6654 for petitioners' 2011 taxable year.[28]

---

[28]Sec. 6651(a)(2) imposes an addition to tax for failure to timely pay the tax shown on a return. That addition to tax is a prescribed percentage of the tax actually shown on the return. The prescribed percentage increases up to a stated maximum based on the extent of the delinquency of payment. Sec. 6654 imposes

(continued...)

[*83] Once again, our conclusion does not leave respondent without means of pursuing the assessment and collection of tax on petitioners' nonpartnership income for the year. If petitioners' loss from SNJ, Ltd., or their NOL carryforward to 2011 is reduced or eliminated as a result of partnership-level proceedings concerning SNJ, Ltd., or other partnerships whose losses contributed to the NOL carryforward, respondent will then be able to assess any resulting increase in petitioners' tax for 2011. See sec. 6230(a).

G.  2012

Respondent's position in regard to petitioners' 2012 taxable year is much like his position in regard to 2007: He asks us to uphold a deficiency determined on the basis of increases to nonpartnership income while ignoring losses from partnerships. The principal difference between 2007 and 2012 is that most of the partnership losses that petitioners claim offset their 2012 income arose in prior years and take the form of an NOL carryforward to 2012. While the $11,463,228 NOL carryforward deduction from 2011 that petitioners claim on their unsigned 2012 return is not a partnership item, it is an affected item. In substantial part, petitioners' claimed NOL deduction for 2012 traces back to the $7,594,316 loss

---

[28](...continued)
an addition to tax on a taxpayer who does not make estimated tax payments as required to satisfy the portion of his tax liability not covered by withholding.

[*84] from SNJ, Ltd., reported on their unsigned 2007 return. Respondent's motion to dismiss shows that he accepts that the 2007 loss petitioners reported from SNJ, Ltd., can be adjusted only by means of a partnership-level proceeding concerning that entity. Thus, any NOL carryforward to petitioners' 2012 taxable year would be an affected item that "cannot be determined before final resolution and adjustment" of its partnership item components. See GAF Corp. & Subs. v. Commissioner, 114 T.C. at 521.

Because we cannot uphold respondent's recomputed deficiency for petitioners' 2012 taxable year and we have no grounds for holding invalid the notices of deficiency respondent issued for that year, we must conclude, at this juncture, that petitioners have no deficiency for that year. It follows that petitioners are not liable for an addition to tax under section 6651(a)(1) for the year.

As previously noted, the addition to tax imposed by section 6651(a)(2) applies when a taxpayer fails to timely pay the tax shown on a return. When a taxpayer fails to file a return and the Commissioner prepares one on the taxpayer's behalf under section 6020(b), the so-called substitute-for-return (SFR) is treated as the taxpayer's return for purposes of the section 6651(a)(2) addition to tax. Sec. 6651(g). Respondent argues that petitioners are liable for an addition to tax under

**[\*85]** section 6651(a)(2) for their 2012 taxable year on the basis of an SFR he prepared for that year. We have determined, however, that--at least as of now-- petitioners do not owe any tax for 2012, so that their correct tax liability for the year is necessarily lower than whatever amount might appear on any SFR respondent prepared for the year. And section 6651(c)(2) provides: "If the amount required to be shown as tax on a return is less than the amount shown as tax on such return, subsection[] (a)(2) * * * shall be applied by substituting such lower amount." It thus follows from our determination that petitioners have no deficiency for their 2012 taxable year that they are not liable for any addition to tax for that year under section 6651(a)(2).

Section 6654 requires individual taxpayers to pay estimated tax for each taxable year in four quarterly installments due in April, June, and September of the year and January of the following year. Each payment must equal "25 percent of the required annual payment." Sec. 6654(d)(1)(A). Section 6654(d)(1)(B) defines "required annual payment" to mean "the lesser of--(i) 90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or (ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year." A taxpayer who does not timely pay the required

**[*86]** installments of estimated tax is subject to an addition to tax, computed in the nature of interest on the underpayment. See sec. 6654(a).

Respondent argues that his recomputed deficiency for 2012 and petitioners' failure to file a return for that year establish that petitioners were required to make estimated payments equal to 90% of the tax reflected in his recomputed deficiency. Referring to evidence that petitioners made no estimated payments for 2012, respondent claims that they are liable for an addition to tax under section 6654(a). Respondent notes that, "[a]lthough petitioners eventually provided a return for the 2011 tax year, it was not until after the notices of deficiency had been issued", thereby suggesting that petitioners' 2011 return cannot be taken into account for purposes of section 6654(d)(1)(B)(ii).

Because we have determined that petitioners do not have a deficiency for 2012, it follows that the amount described in section 6654(d)(1)(B)(i) in regard to that year is zero. We thus need not decide whether petitioners' 2011 return can be taken into account for purposes of section 6654(d)(1)(B)(ii). But see Rev. Rul. 2003-23, 2003-1 C.B. 511, 512 ("[W]hen an individual files a late return for the preceding taxable year and pays as required the installments properly predicated on tax shown on that return, the Service will not impose the addition to tax under section 6654(a) for the underpayment of estimated tax for the current taxable

[*87] year."). Respondent thus has not established that petitioners were required to make estimated tax payments for the year. Consequently, we do not uphold his determination of the addition to tax for the year under section 6654(a).

We see no respect in which our decision will prejudice respondent's ability to assess tax on petitioners' nonpartnership income for their 2012 taxable year in the event that the offsetting losses petitioners claim are sufficiently reduced as a result of adjustments effected through partnership proceedings.

> Decision will be entered under Rule 155 in docket No. 29815-13.
>
> Decision will be entered for petitioners for the taxable years ended December 31, 2007, 2009, 2010, 2011, and 2012, and an appropriate order will be issued for the taxable year ended December 31, 2008, in docket No. 9539-15.